**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| MICHELLE BYERS-ROBSON, et al., | : | Case No. 1:24-cv-496 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| MEDICAL MARKETING SOLUTIONS | : | |
| GROUP, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER AND OPINION

---

This matter is before the Court on Defendants' Motion to Dismiss (Doc. 5). Plaintiffs filed a Response in Opposition (Doc. 7), to which Defendants filed a Reply in Support (Doc. 9). Thus, this matter is ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**.

### ALLEGED FACTS

Plaintiff Michelle Byers-Robson, an Ohio resident, created Plaintiff Mantra Meetings, LLC ("Mantra"), an Ohio company, in 2018 to facilitate conferences for medical professionals. (Compl., Doc. 1, ¶ 19.) In October 2020, Plaintiff Byers-Robson was introduced to Defendant Samir Patel, a New Jersey resident. (*Id.* at ¶¶ 10, 23.) Defendant Patel is the chief operating officer of Defendant Medical Marketing Solutions Group, LLC ("MMSG"), a New Jersey based company. (*Id.* ¶¶ 8, 23.) Defendant Patel and Plaintiff

Byers-Robson began to discuss a partnership between their companies. (*Id.* at ¶ 24.) Defendant MMSG provided Plaintiff Byers-Robson with a non-disclosure agreement so that the parties could discuss their businesses more freely. (*Id.* at ¶¶ 24-29.) As these discussions progressed, Defendant Christopher Cognetti, MMSG's Executive Vice President, joined Defendant Patel in representing Defendant MMSG's interest in a potential partnership. (*Id.* at ¶¶ 11, 28, 29.) Eventually, Defendant MMSG agreed to hire Plaintiff Byers-Robson and merge Plaintiff Mantra into Defendant MMSG. (*Id.* at ¶ 38.) Defendant MMSG required Plaintiff Byers-Robson to sign non-compete and non-solicitation agreements, along with an agreement to dissolve Plaintiff Mantra Meetings. (*Id.* at ¶¶ 44, 45.)

Plaintiffs Byers-Robson and Mantra officially joined Defendant MMSG on January 1, 2022. (Compl., Doc. 1, ¶ 41.) Defendant MMSG quickly terminated Plaintiff Byers-Robson, however, for "multiple vague, fraudulent, and/or fabricated factors" on January 17, 2022. (*Id.* at ¶ 66.) The following day, Defendants MMSG, Patel, and Cognetti offered Plaintiff Byers-Robson an Independent Consultancy Contract, permitting her to perform the same functions as in her previous role. (*Id.* at ¶ 71.) As a condition of the Independent Consultancy Contract, Plaintiff Byers-Robson was required to execute a Mutual Employment Separation and Release Contract. (*Id.* at ¶ 72.) Ultimately, Plaintiff Byers-Robson entered into both contracts. (*Id.* at ¶ 73.)

On February 9, 2022, Defendant RN Enterprises, LLC ("Red Nucleus"), a Delaware company, acquired Defendant MMSG. (Compl., Doc. 1, ¶¶ 9, 74.) Shortly after, Defendant Red Nucleus cancelled the Independent Consultancy Agreement and Plaintiff Byers-

2

Robson was released from her non-compete agreement. (*Id.* at ¶¶ 87-88.) Plaintiff Byers-Robson then joined another employer while recruiting two of Defendant Red Nucleus' employees to join her. (*Id.* at ¶¶ 88-89.) After leaving Defendant Red Nucleus, Plaintiff Byers-Robson learned that during her merger discussions with Defendants Patel and Cognetti, they were working as agents of Defendant Red Nucleus. (*Id.* at ¶ 99.) Specifically, Plaintiff Byers-Robson learned that Defendant MMSG identified Defendant Red Nucleus as the recipient of commission for contracts Plaintiff negotiated in the fall of 2021, months before Defendant Red Nucleus acquired Defendant MMSG. (*Id.*)

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on September 11, 2024, bringing claims for: (1) breach of fiduciary duty; (2) breach of contract, (3) breach of mutual non-disclosure agreement; (4) tortious interference with business and contractual relations; (5) fraud; (6) unjust enrichment; (7) wrongful termination; and (8) successor liability. (Compl., Doc. 1.) Defendants Patel, Cognetti, MMSG, and Red Nucleus ("Moving Defendants") then moved to dismiss Plaintiffs' claims. (Motion, Doc. 5.)

## LAW & ANALYSIS

Moving Defendants seek to dismiss Plaintiffs' claims for lack of personal jurisdiction and failure to state a claim. The Court will first analyze Moving Defendants' personal jurisdiction argument.

### I. Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal if a court lacks personal jurisdiction over a defendant. "The party seeking to assert personal jurisdiction

3

bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quotation omitted). When, as here, the Court decides the motion on written submissions, it must consider the pleadings and affidavits "in a light most favorable to the plaintiff" and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991). In this context, Plaintiffs need only make a prima facie showing that personal jurisdiction exists—a "relatively slight" burden. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988).

Personal jurisdiction may be either general or specific. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction "extends to any and all claims brought against a defendant who is essentially at home in the [s]tate." *Id.* A defendant is at home in a state when it is his "place of domicile" or, for a corporation, its "place of incorporation and principal place of business." *Id.* at 358-59. In contrast, specific jurisdiction requires that the lawsuit "arise out of or relate to the defendant's contacts with the forum." *Id.* at 359. As Moving Defendants do not reside or have their principal places of business in Ohio (*See* Compl., Doc. 5, ¶ 7), Plaintiffs must show that this Court has specific jurisdiction over Moving Defendants.

"When sitting in diversity, a federal court may exercise [specific] personal jurisdiction only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021) (citation omitted). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v.*

*Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Moving Defendants argue that both Ohio's long arm statute and due process preclude jurisdiction. (Motion, Doc. 5, Pg. ID 68-70.) The Court considers each in turn.

### a. Ohio's Long Arm Statute

Ohio's long-arm statute lists nine situations in which Ohio courts may exercise personal jurisdiction over an out-of-state defendant. *See* Ohio Rev. Code § 2307.382(A). Plaintiffs contend that three provisions apply here: transacting any business in Ohio, contracting to supply services or goods in Ohio, and causing tortious injury in Ohio. (Response, Doc. 7, Pg. ID 109.) Plaintiffs' Response, however, only provides analysis on the transacting business provision. (*Id.*)

The clause "transacting any business" is understood broadly under Ohio's long-arm statute. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006). The term "transact" means "to prosecute negotiations; to carry on business; to have dealings." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990) (quotation omitted). It is a "broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Id.* (quotation omitted). That said, "a nonresident's ties must create a substantial connection with the forum state." *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994) (quotation omitted).

When the claim involves a contract, courts often consider two factors in the "transacting business" inquiry: "(1) if the defendant reached out to the plaintiff in the forum state to create a business relationship; and (2) whether the parties conducted their

contract negotiations in the forum state or agreed on terms affecting the forum state." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 828 (S.D. Ohio 2021). "[M]erely directing communications to an Ohio resident for the purpose of negotiating an agreement" is not enough, by itself, to constitute transacting business in Ohio. *Id.* (quotation omitted). Such communications must be paired with "some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id.* (quotation omitted).

The Court will analyze the two factors for Defendant Red Nucleus independently from the other Moving Defendants. Looking first to Defendant Red Nucleus, Plaintiffs provide no allegations that Defendant Red Nucleus contacted them to form a business relationship. Moreover, the parties never engaged in contract negotiations, let alone formed a contract with one another. Plaintiffs' Response fails to point to any contact Defendant Red Nucleus had with Ohio or Plaintiffs. Thus, Plaintiffs have failed to plead that Defendant Red Nucleus has transacted business in Ohio or that this Court otherwise has personal jurisdiction over Red Nucleus.

For the remaining Defendants, Patel and Cognetti initiated negotiations with Plaintiff Byers-Robson on behalf of Defendant MMSG to form a shared business venture. (Compl., Doc. 1, ¶¶ 24-46.) The negotiations led to a joint venture between Defendant MMSG and Plaintiff Mantra, an Ohio based company. (*Id.* at ¶¶ 7, 38.) Moreover, as part of this joint venture, Defendant MMSG committed to hiring all of Plaintiff Mantra's employees. (*Id.* at ¶ 43.) Courts analyzing Ohio's long arm statute have found that a joint venture with an Ohio company is adequate to establish a continuing obligation that

6

affects the forum state. *See, e.g., Ardent Techs. Inc. v. Advent SVCS LLC,* No. 3:23-CV-137, 2023 U.S. Dist. LEXIS 153005, at *16 (S.D. Ohio, Aug. 29, 2023) (finding that initiating a joint venture with an Ohio corporation would affect Ohio); *Thomas & Thomas Rodmakers, Inc. v. Sharpe's, Inc.,* No. 1:06-CV-421, 2007 U.S. Dist. LEXIS 25594, at *25 (S.D. Ohio, Apr. 5, 2007) (finding that contract negotiations and the purchase of an Ohio corporation's assets is sufficient to constitute "transacting business" under the Ohio long arm statute).

Defendants rebut by focusing on their employment relationship with Plaintiff Byers-Robson. (Motion, Doc. 5, Pg. ID 69; Reply, Doc. 9, Pg. ID 129.) Specifically, Defendants argue that their connections with Plaintiffs and the forum state are insufficient since they hired Plaintiff Byers-Robson in a remote capacity. (*Id.*) Defendants, however, fail to dispute how their joint venture with Plaintiff Mantra did not provide the required contacts under the Ohio long arm statute. As Plaintiffs plead that Defendants Patel, Cognetti, and MMSG negotiated with an Ohio resident to enter a joint venture with an Ohio based company, the Court finds these allegations sufficient to satisfy Ohio's long arm statute.

### a. Due Process

Given that the Court may exercise personal jurisdiction over Defendants MMSG, Patel, and Cognetti under Ohio's long arm statute, the question turns to due process considerations. "The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore,* 571 U.S. 277, 283 (2014). Accordingly, a plaintiff must demonstrate that jurisdiction would comport with due process and not offend "traditional notions of fair play and

7

substantial justice." *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945). Courts look to whether: (1) the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) the claim arose from the defendant's contacts with the forum state, and (3) the defendant's actions or consequences of such actions had a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (quotations omitted). The Court considers each in turn.

### i. Purposeful Availment

"The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc. v Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quotations omitted). This ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up). A defendant need not have physical contacts with the forum state, however, as long as his efforts were purposefully directed towards the forum state. *Id.* at 476.

"Identical standards are used to interpret the 'transacting any business' standard of Ohio's Long–Arm Statute and the 'purposeful availment' prong of the constitutional

8

standard." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164 (S.D. Ohio 2012) (citing

*Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006)).

Accordingly, the preceding analysis remains relevant.

Defendants MMSG, Patel, and Cognetti directed their actions towards Ohio. As

explained, Defendants Patel and Cognetti negotiated a business relationship with Ohio-

based Plaintiffs. (Compl., Doc. 1, ¶¶ 24-46.) These negotiations culminated in a joint

venture where Plaintiff Mantra merged with Defendant MMSG to create a new company

division. (*Id.* at ¶ 38.) When it comes to interstate contractual obligations, "parties who

reach out beyond one state and create continuing relationships and obligations with

citizens of another state are subject to regulation and sanctions in the other State for the

consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation omitted); *see also*

*Ardent Techs. Inc.*, 2023 U.S. Dist. LEXIS 153005, at *20 (Defendants' knowledge that "they

would be drawing from Ohio's well" supported finding of purposeful availment.). Here,

Ohio was not merely implicated by the "unilateral activity" of a contracting plaintiff who

just happened to reside in Ohio. *Herold v. Venetis*, 226 N.E.3d 1092, 1104 (Ohio Ct. App.

Oct. 23, 2023). Rather, Defendants MMSG, Patel, and Cognetti reached into Ohio to form

a continuing relationship and purposefully availed themselves of the privileges and

consequences of doing business in Ohio. *See Ardent Techs. Inc.*, 2023 U.S. Dist. LEXIS

153005, at *20 (finding that the defendant purposefully availed itself when it "engaged in

an ongoing joint venture" with the Ohio-based plaintiff).

## ii.    Arising Under

The Court next considers whether the cause of action arises from Defendants MMSG, Patel, and Cognetti's contacts with Ohio. This is a "lenient standard" that does not require that the cause of action "formally" arise from a defendant's contacts with the forum. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007). Instead, this standard is "met when the operative facts are at least marginally related to the alleged contacts between the defendant and the forum." *Lyngaas v. Curaden Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quotation omitted).

Here, Plaintiffs allege Defendants entered into a joint venture with Plaintiff Mantra and employed Plaintiff Byers-Robson. (Compl., Doc. 1, ¶¶ 38, 46, 72.) Plaintiffs' claims arise from the falling out of this relationship and the termination of Plaintiff Byers-Robson. As Plaintiffs' claims involve Defendants MMSG, Patel, and Cognetti's actions during the formation and termination of these relationships, these claims arise directly from Defendants MMSG, Patel, and Cognetti's contacts with Ohio. *See Calphalon Corp. v. Rowlette*, 228 F.d3d 718, 728 (6th Cir. 2000) (finding that the termination of a business relationship arises from minimum contacts established during that relationship); *Concord Music Grp., Inc. v. Anthropic PBC*, 738 F. Supp. 3d 973, 984-85 (M.D. Tenn. 2024) ("Ohio could exercise personal jurisdiction over the nonresident defendant because the parties' business relationship arose directly out of the defendant's contacts with Ohio.")

### iii.    Reasonableness

Finally, the Court considers whether "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state

10

to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). When the first two conditions are met, it is "only the unusual case" in which the defendant presents a "compelling" reason that jurisdiction would be unreasonable. *Air Prod. & Controls*, 503 F.3d at 554 (quotation omitted); *Burger King*, 471 U.S. at 477. In making this determination, courts consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prod. & Controls*, 503 F.3d at 554-55.

Defendants provide no argument as to why exercising personal jurisdiction over them would be unreasonable. Moreover, although Defendants MMSG, Patel, and Cognetti reside out of state, this—in and of itself—does not create an unreasonable burden to preclude jurisdiction. *See Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1081 (S.D. Ohio 2022). Ohio also has an interest in adjudicating this dispute. This case involves both an Ohio resident and the merger of an Ohio-based company. Thus, exercising jurisdiction is reasonable.

For these reasons, Plaintiffs have made a prima facie showing that this Court has personal jurisdiction over Defendants MMSG, Patel, and Cognetti.

## II.     Motion to Dismiss for Failure to State a Claim

The Court now turns to Defendants' argument that Plaintiffs have failed to state a claim against them. (Motion to Dismiss, Doc. 55, Pg. ID 73-83.) The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to

dismiss tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555.

As an initial matter, Defendants argue that Plaintiffs' Complaint should be dismissed because they did not attach (1) an at-will employment agreement that Plaintiff Byers-Robson entered into with Defendant MMSG and (2) a separation agreement terminating Plaintiff Byers-Robson's employment. (Motion, Doc. 5, Pg. ID 67.) Defendants attached these documents in their motion and contend that they contradict the allegations included within the Complaint. (*Id.*)

"[A] Rule 12(b)(6) motion should be decided solely on the complaint." *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). But, there is an exception to this general rule: a court may review "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (cleaned up). As the Sixth Circuit instructs, "a document is central to a complaint when the legal sufficiency of the complaint depends on the content of the document." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 513 (6th Cir. 2025). For a court to consider such documents, it must also be "clear that there exist no material disputed issues of fact regarding the relevance of the documents" and no dispute as to the documents' authenticity. *Diei*, 116 F.4th at 644 (quotation omitted); *Moyer v. Gov't Emps. Ins. Co.*, 114 F.4th 563, 568 (6th Cir.

12

2024). Here, although Plaintiffs make some references to the employment agreement, none of these references are central to any of Plaintiffs' claims. (*See e.g.* Compl, Doc. 1, ¶¶ 88, 143.) Moreover, Plaintiffs only make a single reference to the separation agreement. (Compl., Doc. 1, ¶ 73.) This lone allegation is not central to any of Plaintiffs' claims. Thus, the Court will not consider the two contracts in its analysis.

The Court will next analyze each of Plaintiffs' claims in turn.

### a. Breach of Fiduciary Duty

Plaintiffs' first claim alleges that Defendants breached their fiduciary duties to Plaintiffs by, among other things, terminating Plaintiff Byers-Robson and "unfairly acquiring Plaintiff[s'] book of business." (Compl., Doc. 1, ¶ 104.) Under Ohio law, a claim for breach of fiduciary duty requires three elements: "(1) the existence of a duty arising from a fiduciary relationship; (2) a failure to observe the duty; and (3) an injury resulting proximately therefrom." *Brosz v. Fishman*, 99 F. Supp. 3d 776, 786 (S.D. Ohio 2015). Defendants argue that Plaintiffs have failed to sufficiently plead that any Defendant owed either Plaintiff a fiduciary duty. (Motion, Doc. 5, Pg. ID 73-75.) Defendants specifically contend that Plaintiff Byers-Robson's status as an at-will employee precludes Defendants from bearing a fiduciary duty to her. (Motion, Doc. 5, Pg. ID 74.) Defendants' argument that Plaintiff Byers-Robson was an at-will employee relies on two things: (1) Defendants' claim that the Complaint acknowledges that Plaintiff Byers-Robson was an at-will employee; and (2) Plaintiff Byers-Robson's employment agreement with Defendants. (*Id.*) The Complaint, however, never states that Plaintiff Byers-Robson was an at-will employee. In fact, the paragraph Defendants cite to support this argument

expressly states that Defendants "improperly asserted" that Plaintiff Byers-Robson was an at-will employee. (*Id.* (citing Compl., Doc. 1, ¶ 68.)) Next, as already determined, the Court cannot look outside the pleadings and consult the employment agreement to determine whether Plaintiff Byers-Robson's employment was at will. Thus, Defendants' first argument fails.

Defendants next argue that Plaintiff has failed to allege sufficient facts to establish that Defendants Patel and Cognetti owed a fiduciary duty to Plaintiffs. (Motion, Doc. 5, Pg. ID 74-75.) Parties engaged in a joint venture, however, owe each other fiduciary duties. *De Boer Structures (U.S.A.) v. Shaffer Tent & Awning Co.*, 233 F. Supp. 2d 934, 846 (S.D. Ohio 2002). And here, Plaintiffs plainly allege that they formed a joint venture with Defendants MMSG, Patel, and Cognetti. (Compl., Doc. 1, ¶¶ 46, 102, 103.) Thus, Defendants' alleged participation in the joint venture formed a fiduciary duty and this argument also fails. Accordingly, this claim may proceed.

### b. Breach of Contract

Plaintiffs' next claim alleges that Defendants breached a contract with Plaintiffs by terminating Plaintiff Byer-Robson's employment shortly after she began work for Defendant MMSG. (Compl., Doc. 1, ¶ 117.) "Under Ohio law, the elements of a breach of contract claim are: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *V&M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012). Defendants move to dismiss this claim by first arguing that it contradicts the employment and separation contracts. (Motion, Doc. 5, Pg. ID 75.) As explained above, the Court may not

14

consult these documents at this stage of the litigation. Defendants next argue that Plaintiffs failed to plead that Defendants Patel and Cognetti were parties to the alleged contract. (*Id.*) This, however, is contradicted by a reading of the Complaint. Plaintiffs allege that "a binding, contractual relationship existed between Plaintiffs and Defendants," and that Defendants Patel and Cognetti "induced Plaintiffs into an employment contract." (Compl., Doc. 1, ¶¶ 113, 116.) Viewing the Complaint in a light most favorable to Plaintiffs, the Court finds these allegations sufficient to allege a contractual relationship between Plaintiffs and Defendants Patel and Cognetti. Accordingly, Plaintiffs' breach of contract claim may proceed.

### c. Breach of Non-Disclosure Agreement

Plaintiffs next bring a claim for Defendants' breach of the non-disclosure agreement that the parties allegedly entered while negotiating their joint venture. (Compl., Doc. 1, ¶¶ 121-144.) Defendants first move for dismissal of this claim by arguing that Defendants Patel and Cognetti were not parties to the non-disclosure agreement. (Motion, Doc. 5, Pg. ID 77.) Indeed, to succeed on a breach of contract claim, the plaintiff, at minimum, must allege that the defendant was a party to that contract. *Aragonite Capital Markets, LLC v. Dark Horse Media, LLC*, No. 1:22-CV-222, 2023 U.S. Dist. LEXIS 53193, at *4 (N.D. Ohio Mar. 28, 2023). Here, nowhere in Plaintiffs' Complaint does it allege that Defendants Patel and Cognetti were parties to the non-disclosure agreement. Moreover, the agreement itself only lists Defendant MMSG and Plaintiff Mantra as parties. (Non-Disclosure Agreement, Doc. 1, Pg. ID 37.) Accordingly, this claim fails against Defendants Patel and Cognetti, but may proceed against Defendant MMSG. Defendants' remaining

15

arguments involve the employment agreement, but the Court will again not look outside of the pleadings.

### d. Tortious Interference

Defendants next seek dismissal of Plaintiffs' tortious interference claim because Plaintiffs failed to allege that Defendants interfered with their business relationships. (Motion, Doc. 5, Pg. ID 78.) Under Ohio law, the elements for a claim of tortious interference with a business relationship are: "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Reed Elsevier, Inc. v. TheLaw.net Corp.*, 269 F. Supp. 2d 942, 949 (S.D. Ohio 2003).

Defendants contend that Plaintiffs only provide conclusory allegations to support the interference element of its claim and that its allegations are irreconcilable. (Motion, Doc. 5, Pg. ID 78.) The Court agrees. Plaintiffs bring this claim against all Defendants, but a claim for tortious interference requires that the defendant be an outsider or third party to the business relationship. *Neely v. Crown Sols. Co., LLC*, No. 3:13-CV-109, 2013 U.S. Dist. LEXIS 162958, at *45 (S.D. Ohio Nov. 15, 2023). Here, Defendant MMSG had a direct business relationship with Plaintiffs. (Compl., Doc. 1, ¶¶ 46, 147.) Furthermore, Defendants Patel and Cognetti were employees of Defendant MMSG and are thus unable to be held individually liable for the alleged interference. *See White v. Adena Health Sys.*, 2018 U.S. Dist. LEXIS 114975, at *40 (S.D. Ohio July 11, 2018) ("Ohio law precludes individual liability when the individual is an employee of a party to the relationship at issue, unless the employee acted solely in his or her individual capacity and benefitted

16

from the alleged interference.") The only Defendant who was a third party to the business relationship is Defendant Red Nucleus, but the Court lacks personal jurisdiction over Defendant Red Nucleus. Thus, Plaintiffs' tortious interference claim against Defendants MMSG, Patel, and Cognetti fails.

### e. Fraud

Defendants also move to dismiss Plaintiffs' fraud claim for failing to plead with particularity. The elements of a fraud claim in Ohio are: (1) "a representation or, where there is a duty to disclose, concealment of a fact," (2) "which is material to the transaction at hand," (3) "made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred," (4) "with the intent of misleading another into relying upon it," (5) "justifiable reliance upon the representation or concealment," and (6) "a resulting injury proximately caused by the reliance." *Cohen v. Lamko, Inc.*, 462 N.E.2d 407, 409 (Ohio 1984). As "claims based on fraud pose a high risk of abusive litigation," Federal Rule of Civil Procedure 9(b) provides that a plaintiff "must state with particularity the circumstances constituting fraud or mistake." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (cleaned up). This rule requires the plaintiff: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Id.*

Here, Plaintiffs fail to plead the appropriate level of specificity as required by Rule 9(b). Plaintiffs only provide vague allegations of fraud, referring to Defendants generally. (Compl., Doc. 1, ¶¶ 151-157.) "Rule 9(b) requires plaintiffs to allege fraud with

particularity on a defendant-by-defendant basis, and not generally as to all defendants,"

and Plaintiffs have failed to do so. *United States ex rel. Kramer v. Doyle*, No. 1:18-CV-373,

2022 U.S. Dist. LEXIS 72919, at *22 (S.D. Ohio Apr. 21, 2022). Moreover, Plaintiffs fail to

allege when or where any of these allegedly fraudulent statements were made. (Compl.,

Doc. 1, ¶¶ 151-157.) Even when looking in a light most favorable to Plaintiffs, this claim

fails.

### f. Unjust Enrichment

The Court now turns to Plaintiffs' unjust enrichment claim. To recover for unjust

enrichment under Ohio law, the plaintiff must prove: "(1) a benefit conferred by a

plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3)

retention of the benefit by the defendant under circumstances where it would be unjust

to do so without payment (unjust enrichment)." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d

1297, 1302 (Ohio 1984). Defendants argue that the express contracts between the parties

alleged by Plaintiffs preclude their unjust enrichment claim. (Motion, Doc. 5, Pg. ID 81.)

Plaintiffs conversely argue that unjust enrichment claims may be brought despite a

breach of contract claim. (Response, Doc. 7, Pg. ID 120.) The Court again sides with

Defendants.

The purpose of these claims is "not to compensate the plaintiff for any loss or

damage suffered by [her] but to compensate [her] for the benefit [s]he has conferred on

the defendant." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (quotation

omitted). That said, "a plaintiff may not recover under the theory of unjust enrichment

when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F.

Supp. 2d 892, 904 (S.D. Ohio 2013). In other words, "unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute." *Id.* (quotation omitted).

Plaintiffs' only allegation supporting this claim simply states that "[a]ll named Defendants have been unjustly enriched by acquiring Plaintiffs' business interests/assets and confidential information without properly compensating Plaintiffs." (Compl., Doc. 1, ¶ 159.) Defendants aptly note that Plaintiffs have alleged the existence of contracts covering the subject of Defendants' alleged business acquisition of Plaintiff Mantra. (Motion, Doc. 5, Pg. ID 81 (citing Compl., Doc. 1, ¶¶ 38, 41, 45, 57, 73).) As these contracts cover the same subject as Plaintiffs' unjust enrichment claim and no party disputes their existence, Plaintiffs' claim is barred. *See Mitchell v. Cal. Cas. Gen. Ins. Co.*, No. 3:18-CV-228, 2019 U.S. Dist. LEXIS 216183, at *3-4 (S.D. Ohio Dec. 17, 2019) *report and recommendation adopted*, No. 3:18-CV-228, 2020 U.S. Dist. LEXIS 10415 (S.D. Ohio Jan. 22, 2020) (dismissing the plaintiff's unjust enrichment claim when it "cover[ed] the same ground" the plaintiff's breach of contract claim.)

### g. Wrongful Termination

Defendants move to dismiss Plaintiffs' wrongful termination claim. (Motion, Doc. 5, Pg. ID 82.) Generally, "the common-law doctrine of employment at will governs employment relationships" in Ohio. *Dohme v. Eurand Am., Inc.*, 956 N.E.2d 825, 829-30 (Ohio 2011). Under this doctrine, termination of an at-will employment relationship does not give rise to a cause of action for damages. *Id.* If an employee is terminated "in contravention of a clear public policy articulated in the Ohio or United States

19

Constitution, federal or state statutes, administrative rules and regulations, or common law," however, a cause of action for wrongful discharge may exist. *Id.*

The elements for a wrongful termination claim are: "(1) that a clear public policy existed and was manifested either in a state or federal constitution, statute or administrative regulation or in the common law"; (2) "that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "that the plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) "that the employer lacked an overriding legitimate business justification for the dismissal." *House v. Iacovelli*, 152 N.E.3d 178, 181 (Ohio 2020). Defendants argue that Plaintiffs have failed to plead the first element, a specific public policy that Plaintiff Byers-Robson's termination violated. (Motion, Doc. 5, Pg. ID 83.) Once again, the Court agrees.

When pleading a claim for wrongful termination, the plaintiff "has the obligation to specify the sources of law that support the public policy [s]he relies upon in h[er] claim." *Dohme*, 956 N.E.2d at 830-31. Failure to do so will mean that the plaintiff has not articulated the clarity element with the required specificity. *Id.* at 831. Plaintiffs' Complaint merely provides a conclusory allegation that Plaintiff Byers-Robson's termination was "in violation of law and in violation of public policy." (Compl., Doc. 1, ¶ 162.) Since Plaintiffs' Complaint and Response fail to articulate a specific public policy that Defendants allegedly violated, this claim must be dismissed.

### h. Successor Liability

Defendants move to dismiss Plaintiffs' last claim for successor liability. (Motion, Doc. 5, Pg. ID 83.) In their Response, Plaintiffs failed to respond to Defendants' argument for dismissal. (*See* Response, Doc. 7.) "Where a party fails to respond to an argument in a motion to dismiss the Court assumes [s]he concedes this point and abandons the claim." *ARJN #3 v. Cooper*, 517 F. Supp. 3d 723, 750 (M.D. Tenn. 2021) (quotation omitted); *see also Mekani v. Homecomings Fin., LLC*, 725 F. Supp. 2d 785, 797 (E.D. Mich. 2010). In any event, Plaintiffs' allegations to support this claim are solely directed against Defendant Red Nucleus. (Compl., Doc. 1, ¶¶ 164-169.) As this Court does not have jurisdiction over Defendant Red Nucleus, this claim must also be dismissed.

### CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 5) is **GRANTED IN PART AND DENIED IN PART**. The Court **ORDERS** the following:

I.      All claims against Defendant Red Nucleus are **DISMISSED WITHOUT PREJUDICE**;

II.     Plaintiffs' claim for breach of fiduciary duty **SHALL PROCEED**;

III.    Plaintiffs' breach of contract claim **SHALL PROCEED**;

IV.     Plaintiffs' breach of non-disclosure agreement claim against Defendants Patel and Cognetti is **DISMISSED**;

V.      Plaintiffs' breach of non-disclosure agreement claim against Defendant MMSG **SHALL PROCEED**;

VI.     Plaintiffs' tortious interference with business and contractual relations claim is

>      **DISMISSED**;

VII.    Plaintiffs' fraud claim is **DISMISSED**;

VIII.   Plaintiffs' unjust enrichment claim is **DISMISSED**;

IX.     Plaintiffs' wrongful termination claim is **DISMISSED**; and

X.      Plaintiffs' successor liability claim is **DISMISSED.**

>    **IT IS SO ORDERED.**

>                          UNITED STATES DISTRICT COURT
>                          SOUTHERN DISTRICT OF OHIO
>
>          By: _____
>                          JUDGE MATTHEW W. McFARLAND